**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

(RC) 2 PHARMA CONNECT, LLC,

               Plaintiff,

    -against-

MISSION PHARMACAL COMPANY,

               Defendant.

---

Case No: 1:21-cv-11096-LJL

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTIONS TO DISMISS AND TO STRIKE

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ......................................................................................................... 2

ARGUMENT .............................................................................................................. 4

I.      (RC) 2 FAILS TO STATE A CLAIM FOR RELIEF ....................................... 4

        A.      (RC) 2 Fails to Allege a Breach of the NDA (Count I) ......................... 4

        B.      (RC) 2 Fails to Allege a Breach of the Proposal (Count II) ................ 10

        C.      (RC) 2 Fails to Allege Anticipatory Breach of the Proposal (Count III) ............. 13

II.     IN THE ALTERNATIVE, THE COURT SHOULD STRIKE (RC) 2'S
        ALLEGATIONS BASED ON INADMISSIBLE SETTLEMENT
        COMMUNICATIONS .................................................................................... 18

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................4, 7, 12, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................4, 8

*In re Bishop*,
    578 B.R. 158 (Bankr. W.D.N.Y. 2017) ...................................................................9

*Canzona v. Atanasio*,
    118 A.D.3d 837 (2d Dept. 2014) ...................................................................11, 12

*Capitol Records, Inc. v. MP3tunes, LLC*,
    611 F. Supp. 2d 342 (S.D.N.Y. 2009).....................................................................7

*Chamberlain v. City of White Plains*,
    986 F. Supp. 2d 363 (S.D.N.Y. 2013).....................................................................6

*Elias v. Rolling Stone LLC*,
    872 F.3d 97 (2d Cir. 2017).....................................................................................7

*Gallo v. Inter-Con Sec. Sys. Inc.*,
    20-cv-4879 (KPF), 2021 WL 3913539 (S.D.N.Y. Sept. 1, 2021) ...........................12

*Kaplan v. Madison Park Grp. Owners, LLC*,
    94 A.D.3d 616 (1st Dept. 2012).............................................................................14

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd sub nom.* 23 F.3d 398 (2d Cir. 1994) ...................18, 19

*Lucente v. Int'l Bus. Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002).......................................................................12, 17, 18

*Orange Cnty. Choppers, Inc. v. Olaes Enterprises, Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007).....................................................................12

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
    83 A.D.3d 804 (2011) .............................................................................................13

*Princes Point LLC v. Muss Dev. L.L.C.*,
    30 N.Y.3d 127 (N.Y. 2017) ...................................................................................14

*Ramsaroop v. Dep't of Educ.*,
  20-cv4947 (ER), 2022 WL 376029 (S.D.N.Y. Feb. 8, 2022)....................................................7

*Ricatto v. M3 Innovations Unlimited, Inc.*,
  No. 18-cv-8404 (KPF), 2019 WL 6681558 (S.D.N.Y. Dec. 6, 2019) ........................13, 15, 16

*St. Christopher's, Inc. v. JMF Acquisitions, LLC*,
  No. 20-3808-CV, 2021 WL 6122674 (2d Cir. Dec. 28, 2021) ...................................13, 14, 15

*U.S. v. Hon*,
  17 F.3d 21 (2d Cir. 1994).........................................................................................................15

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
  792 F.3d 1313 (11th Cir. 2015) .................................................................................................9

*Yankelevitz v. Cornell Univ.*,
  No. 95-cv-4593 (PKL), 1997 WL 115651 (S.D.N.Y. Mar. 14, 1997)...................................18

## Other Authorities

Federal Rules of Civil Procedure Rule 12(b).......................................................................1, 4, 18

Federal Rules of Civil Procedure Rule 12(f) .............................................................................18

Federal Rules of Evidence Rule 408...........................................................................................15

Pursuant to Rules 12(b) and (f) of the Federal Rules of Civil Procedure, Defendant Mission Pharmacal Company ("Mission") submits this Memorandum of Law in support of Mission's motion to dismiss Plaintiff (RC) 2 Pharma Connect LLC's ("(RC) 2") Amended Complaint ("Am. Compl."), and alternatively, motion to strike portions of the Amended Complaint.

## PRELIMINARY STATEMENT

In asserting claims for breach of the parties' Mutual Confidentiality Agreement ("NDA") (Count I) and Proposal (Count II), as well as for anticipatory breach of the Proposal (Count III), (RC) 2 fails to allege any conduct by Mission that allegedly breached or repudiates these agreements..

The sole factual predicate for (RC) 2's claim that Mission breached the NDA (Count I) is that during negotiations of a contemplated additional agreement between the parties, Mission declined to agree to a term that would provide a newly-proposed, exclusive license to (RC) 2—and speculation that Mission's decision not to agree to this license proves that Mission was supposedly breaching or intends to commit future breaches of the NDA. This inference is simply not facially plausible and cannot support a claim that Mission breached the NDA.

With respect to the claim that Mission supposedly breached the Proposal (Count II), the Amended Complaint suggests that the alleged breach related to a failure to collect certain test batches and perform time-sensitive stability testing on them. But the Amended Complaint does not—and cannot—allege that Mission failed to collect the requisite batches or perform the requisite testing. Indeed, the Amended Complaint suggests that Mission *has* performed this work. The failure to identify any conduct that even allegedly breaches the Proposal, nor the specific provision allegedly breached, requires dismissal of this claim.

With respect to the claim for anticipatory breach of the Proposal (Count III), the Amended Complaint fails to allege the requisite "positive and unequivocal" repudiation—and cannot allege

such repudiation given that the communications identified in the Amended Complaint as the basis for this claim expressly confirm Mission's intent to comply with its obligations under the Proposal.

Finally, all Counts improperly include and are based on allegations that are expressly identified as "Settlement Communications." Because these allegations of settlement communications are inextricably intertwined in all Counts, striking such allegations requires dismissal of the Amended Complaint.

## BACKGROUND

On January 8, 2018, the parties entered into an NDA, allowing the parties to explore certain potential commercial relationships, while agreeing to maintain the confidentiality of each other's confidential proprietary and trade secret information. *See* Am. Compl., Ex. A. On May 17, 2019, the parties then executed a Proposal for Mission to assist (RC) 2 in the limited production, testing, and validation of (RC) 2's then-existing formulation and method of making a generic cold sore medication for which (RC) 2 sought to submit an Abbreviated New Drug Application ("ANDA") to the United States Food and Drug Administration ("FDA"). *See* Am. Compl. ¶¶ 29; *see also* Am. Compl., Ex. B ("Proposal"). The Proposal provided that Mission and (RC) 2 would also enter a Manufacturing and Supply Agreement for Mission to manufacture the product on a commercial basis for (RC) 2's commercial launch of its product if (RC) 2 obtained FDA approval. *Id.* The key premise of the Proposal was that (RC) 2 would provide Mission with a working formulation and method of making a generic version of an existing, brand name cold sore cream-based medication with an active ingredient of Docosanol at a 10% concentration ("Product"). *See* Proposal §§ 2.1.1.1, 2.1.1.2, 2.2.1.1, 2.3.1.3. In colloquial terms, this formulation and method is the recipe for making the Product. The Proposal enumerated a limited scope of work consisting of the following phases: 1) Initial Development, including gathering of materials and small-batch testing; 2) Method Development, including validation of the method formulation and process and additional

stability testing and non-stability testing; 3) Technical Transfer; 4) ANDA Preparation; and 5) Commercialization and Validation. *See* Proposal §§ 2.1, 2.2, 2.3, 2.4, and 2.5.

On December 28, 2021[1], (RC) 2 filed the Complaint opening this case and asserting two claims: (1) breach of the parties' NDA "and/or" intention to breach the NDA, "based on [General Counsel Thomas] James' statements that Mission will not grant an exclusive license to technology related to developing Docosanol 10% cream," (*see* Compl. ¶ 115); and (2) breach of the Proposal based on Mission's alleged "failure to confirm" that it had performed certain batch pulls as part of stability testing the Product (*see* Compl. ¶¶ 130-31).

The following night on December 29, 2021, (RC) 2 filed an Amended Complaint containing three claims. *See* Am. Compl. at 24, 26, 28. In Count I, (RC) 2 again claims that Mission breached the NDA, *id.* at 24; in Count II, (RC) 2 alleges Mission breached the Proposal, *id.* at 26; and in the new Count III, (RC) 2 claims Mission has committed an anticipatory breach of the Proposal, *id.* at 28. Notably, in an attempt to support its claims, (RC) 2's Amended Complaint includes as Exhibit F an email chain between Mission's outside counsel and (RC) 2's outside counsel expressly identified as a "Settlement Communication." *See* Am. Compl., Ex. F.

After midnight in the early hours of December 30, 2021, (RC) 2 then filed with this Court an emergency application for a temporary restraining order ("TRO"). After review of Mission's response to the emergency application for the TRO, including the declaration of Mission's project manager Brianne McEwen, which established that the application for the TRO was wholly without merit and that Mission was performing under the Proposal, *see* Docket No. 18, and facing the prospect of sanctions, (RC) 2 agreed to withdraw its emergency application minutes before the

---

[1] Just before the Christmas holiday, on December 23, 2021, (RC) 2 filed a motion to file a complaint under seal, initiating this action. On December 24, 2021, (RC) 2 emailed a copy of its Complaint to Mission. After the Court granted (RC) 2's sealing motion, (RC) 2 opened this case by filing the Complaint (Docket No. 1).

scheduled TRO hearing on Monday, January 3, 2022. The parties then participated in an early mediation that was unsuccessful and resulted in an impasse. Mission therefore now proceeds with its motions to dismiss and to strike portions of the Amended Complaint.

## ARGUMENT

## I.    (RC) 2 FAILS TO STATE A CLAIM FOR RELIEF.

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citation omitted). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original). The Amended Complaint fails to meet this basic standard.

### A.    (RC) 2 Fails to Allege a Breach of the NDA (Count I)

In Count I, (RC) 2 claims that Mission breached the NDA. *See* Am. Compl. ¶¶ 126-134.[2] This count fails to state a cause of action because the allegations lack facial plausibility and are entirely based on hypothetical speculation that does not satisfy the federal pleading standard.

---

[2] The NDA contains an express clause permitting either party to "terminate [the] Agreement at any time by providing written notice to the other party." *See* NDA section 7. Thus, in the event that (RC) 2 seeks to maintain its meritless claims against Mission based on the allegation that Mission "has breached or intends to manufacture and supply docosonal 10% cream to third-party distributors, and/or to act as a distributor, and sell docosonal 10% cream . . . us[ing] (RC) 2's Confidential Information in violation of the NDA," Mission may elect to terminate the NDA and moot (RC) 2's claims.

Additionally, this count impermissibly alleges and relies on inadmissible settlement communications.

As indicated above, the NDA essentially provides reciprocal duties that each party shall maintain the confidentiality of the other party's confidential and proprietary information and trade secrets. *See* Ex. A to Am. Compl., Docket No.8. From this contractual basis, (RC) 2's sole allegation and factual predicate concerning Mission's alleged breach of the NDA is that "[u]pon information and belief, *based on James' statements that Mission will not grant an exclusive license to technology related to developing docosanol 10% cream*, Mission has breached or intends to manufacture and supply docosanol 10% to third-part distributors, and/or to act as a distributor, and sell docosanol 10% cream that it has manufactured." Am. Compl. ¶ 130 (emphasis added); *see also id.* ¶ 73. In other words, (RC) 2 alleges that from comments made by Thomas James, Mission's in-house counsel, during negotiations on the terms of an unsigned draft Technology Transfer Agreement ("TTA") that Mission would not agree to grant exclusive license rights to (RC) 2 that would extend to Mission's own confidential and proprietary information and trade secrets, (RC) 2 asserts that this means that Mission was supposedly breaching the NDA or intended to breach the NDA by manufacturing the (RC) 2 product for itself. (RC) 2 makes no other allegation to support its conclusion that disagreement over this proposed term in the TTA supposedly evidences that Mission is breaching the NDA by making or planning to make the (RC) 2 product for itself. Nor does (RC) 2 include allegations that negate (RC) 2's other allegations in the Amended Complaint that the (RC) 2 Product is still in its testing phase and far from FDA approval to allow the sale of the Product. *See generally* Am. Compl.

Accordingly, (RC) 2's conclusory allegation that Mission's refusal to agree to granting (RC) 2 an exclusive license that extended to Mission's proprietary information and trade secrets –

including Mission's commercial testing and operational protocols and practices that motivated (RC) 2 to come to Mission to test (RC) 2's formula for its Product – supposedly means that Mission is making or plans to make the (RC) 2 product for itself, is simply not facially plausible. Rather, this erroneous conclusion by (RC) 2 and its claim is simply rank speculation of the highest order, and presumably pled by (RC) 2 in an attempt to use the NDA's exclusive forum provision to bring (RC) 2's other breach claims in this Court.[3] Simply stated, the allegation that Mission declined to grant (RC) 2 a new—and never previously discussed demand by (RC) 2—exclusive license does not come close to stating a claim that Mission breached the NDA.

Tellingly, (RC) 2 has neither quoted Mr. James' statements nor attached the TTA to its Amended Complaint, despite referencing these statements as the basis for its claim. This is likely because review of Mr. James' comments in context rebuts the erroneous conclusions (RC) 2 alleges from such comments. In reality, Mr. James merely stated in a comment to the draft TTA, that:

> Mission is not granting any license in the processes or methodologies used by Mission to make this Product nor in any "applications" involving the Product. Mission is the sole owner of the processes and methodologies used by Mission in its know-how to make any product, including but not limited to this particular Product.

*See* TTA Section 10.12. As the preceding comment in the draft TTA makes plain, Mission declined to grant (RC) 2 an "*exclusive*, royalty free license . . . for all applications involving 10% docosanol cream" because to do so would be contrary to Mission's rights under the NDA to protect its own

---

[3] The NDA has an exclusive venue provision that provides in Paragraph 12 that any action arising out of or related to the NDA shall be brought exclusively in the courts located in New York city and county. In contrast, the Proposal contains no such provision and therefore, absent (RC) 2's claim under the NDA, (RC) 2 would be required to bring its other breach claims in the Texas courts where Mission resides and all actions related to the Proposal have occurred. Mission expressly reserves its right to move to dismiss for improper venue if and when there is no longer a claim based on the NDA.

proprietary information and trade secrets.[4] Instead, granting (RC) 2 an exclusive license would transfer Mission's rights in its own proprietary processes and methodologies, along with Mission's know-how that Mission uses to make any number of products for itself and for Mission's other clients, and would contradict the language and purpose of the NDA, which was to protect both parties' respective confidential information that might be used in the testing of the (RC) 2 Product.[5] *Id.* In no way do such comments to the draft TTA yield a conclusion that Mission improperly used (RC) 2's proprietary information, much less the *facially plausible* conclusion required to satisfy the federal pleading standard.

Accordingly, (RC) 2's cursory and speculative allegations that such comments by Mr. James evidence Mission's actual or intended breach of the NDA are implausible, and utterly fail to satisfy the federal pleading standard. *See Iqbal*, 566 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted); *see also Elias v. Rolling Stone LLC*, 872 F.3d 97, 107 (2d Cir. 2017) (affirming district court's dismissal of a claim where the allegations were "too speculative to withstand Defendant's motion to dismiss."); *Ramsaroop v. Dep't of Educ.*, 20-cv4947 (ER), 2022 WL 376029, at *6 (S.D.N.Y. Feb. 8, 2022) (granting defendants' motion to dismiss pro se plaintiff's complaint, despite the liberal reading afforded to

---

[4] In their entirety, Mr. James' comments referred to in (RC) 2's Amended Complaint were as follows:

Mission can make the affirmative statement that as between the parties of RC2 and Mission that RC2 (and not Mission) will own any patents that RC2 is able to obtain on the formulation of its product, but Mission cannot make any statement as to "possible uses" or "exclusivity" of RC2's ownership of anything that RC2 has not yet obtained, which is why these clarifying, marked changes have been made in this Section 10.12(a).

No. Mission is not granting any license in the processes or methodologies used by Mission to make this Product nor in any "applications" involving the Product. Mission is the sole owner of the processes and methodologies used by Mission in its know-how to make any product, including but not limited to this particular Product.

[5] Mr. James' comments are consistent with the purpose of the NDA, which was to enable the parties "to share certain information that is non-public, confidential or proprietary in nature." *See* NDA at 1.

pro se filings, because the allegations were "conclusory and too speculative to survive a motion to dismiss," and the court was unable "'to draw the reasonable inference that the defendant is liable for the misconduct'" alleged) (quoting *Iqbal*, 556 U.S. at 678)); *Capitol Records, Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 347 (S.D.N.Y. 2009) (finding that an allegation amounting to a possibility of misconduct "is too speculative to meet the *Twombly* standard," and therefore granting defendant's motion to dismiss the claim). Mr. James' comments regarding the draft TTA agreement, made during negotiations of that agreement, simply do not "allow[ ] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged"—in fact (RC) 2 has failed to allege any "misconduct" by Mission related to the NDA. *See generally* Am. Compl. Further, as (RC) 2 admits, the draft TTA remains unsigned and unenforceable. Am. Compl. ¶ 76 ("To date, the parties have not entered into the proposed Technology Transfer Agreement.").

Therefore, (RC) 2's failure to allege any facts plausibly supporting a breach or threatened breach by Mission of the NDA mandates the dismissal of Count I.

The Court should also dismiss Count I because (RC) 2 impermissibly alleges and bases it on inadmissible settlement communications under Rule 408 of the Federal Rules of Evidence. Indeed, all of (RC) 2's claims are based to a significant extent on inadmissible settlement communications. *See* Exhibit F and paragraphs 81, 91, 94, 96, 99, 106, 109, 120, 122 and 123 of the Amended Complaint that are incorporated in each of the three counts contained therein. Although the issue of inadmissible allegations is often resolved via a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, *see infra* Section II, (RC) 2's pleading of the settlement discussions throughout its Amended Complaint mandates dismissal because (a) the claims themselves are based upon the inadmissible settlement communications, and (b) these allegations are inextricably intertwined with the remainder of the Amended Complaint so that as

a practical matter, it would be impossible for the parties and the Court to move forward on this Amended Complaint and to distinguish (RC) 2's allegations based on inadmissible settlement communications from those that are not. Indeed, not only does (RC) 2 improperly pepper the Amended Complaint with direct references to the inadmissible communications, *see, e.g.*, *id.* ¶¶ 109 ("Based on an email from Mission's outside counsel . . ."); 122 (citing inadmissible settlement communications and alleging that "Mission's outside counsel contacted outside counsel for (RC) 2"); 123 ("Mission's ultimate response through its outside counsel . . ."), but in many instances, (RC) 2's allegations then refer to "Mission's communications," "Mission's statements," or the equivalent—making it entirely unclear whether such allegations encompass the inadmissible settlement communications. *See, e.g.*, Am. Compl. ¶¶ 81 ("Mission's statements through outside counsel further confirm. . ."); 94 ("Mission's recent communications (through outside counsel). . ."); 96 ("Mission's communications suggest. . ."); 99 (citing to inadmissible settlement communications but vaguely alleging that "Mission's communications suggest that it has gathered the materials and begun to perform six-month stability testing," and "Mission's representations . . . also confirm"); 106 ("in light of Mission's recent representations. . ."); 109 ("Communications from Mission's counsel . . ."); 120 ("Mission's failure to respond. . ."); 123 ("Mission's correspondence indicates . . ."). This problem is made even more difficult because (RC) 2 then reincorporates all preceding allegations into each count, *see id.* ¶¶ 126, 135, and 151, thus it is impossible to tell the precise extent that (RC) 2 bases each of its claims on inadmissible settlement communications.[6] Therefore, unless the Court dismisses the Amended Complaint in its entirety,

---

[6] Such shotgun-style pleading is yet another reason that the Amended Complaint should be dismissed. *See In re Bishop*, 578 B.R. 158, 167-68 (Bankr. W.D.N.Y. 2017) (criticizing and dismissing complaint where each count adopted the preceding allegations, causing each successive count to carry all that came before it, which makes it virtually impossible to know which allegations of fact support which claim(s)) (citing *LaCroix v. W. D. Ky.*, 627 F. App'x 816, 817 (11th Cir. 2015), and also citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1318–26 (11th Cir. 2015)).

as the instant litigation progresses the Court and Mission will be forced to try to untangle the inextricably intertwined allegations based on inadmissible settlement communications from those that are not.

### B.      (RC) 2 Fails to Allege a Breach of the Proposal (Count II)

In Count II, (RC) 2 alleges that Mission breached the Proposal. *See* Am. Compl. ¶¶ 135-150. Like Count I, this claim also fails to state a cause of action because it is entirely based on impermissible speculation that does not satisfy the federal pleading standard. Additionally, (RC) 2 fails to identify any provisions of the Proposal that (RC) 2 contends were breached or any conduct by Mission that allegedly breached the Proposal.[7] The closest the Amended Complaint comes to identifying which conduct allegedly gives rise to this claim is its allegation that Mission's obligation to perform certain "stability tests that form the basis for (RC) 2's breach allegations herein . . . ." Am. Compl. ¶ 91. This paragraph admits, however, that Mission "has performed the required stability tests" for certain batches, suggesting that perhaps the Amended Complaint is based on Mission's alleged failure to perform *upcoming* stability tests, known as six-month stability pulls on the (RC) 2 Product. But the Amended Complaint further admits that "Mission's communications suggest that it has timely initiated the six-month stability testing . . ." *Id.* at ¶ 96. Indeed, (RC) 2 withdrew its baseless application for emergency injunctive relief after receiving written confirmation from Mission—a declaration under penalty of perjury—that Mission had performed all required conduct to date, including a six-month stability pull (collecting a sample for testing), and intended to continue to perform all stability pulls and testing. The Amended

---

[7] Even if (RC) 2 had stated a viable cause of action against Mission, (RC) 2's misconduct—which, among other actions by (RC) 2, includes (RC) 2 falsely representing that it had a viable formula and methodology to create the Product—precludes its claims regarding Mission's alleged breaches.

Complaint's failure to identify any conduct by Mission that allegedly breached the Proposal requires dismissal of (RC) 2's claim for breach of the Proposal.

The Amended Complaint also appears to claim breach based on allegations that Mission did not immediately respond to (RC) 2's emailed, extra-contractual demands that Mission provide certain confirmations to (RC) 2 within a time frame unilaterally set by (RC) 2. More specifically, (RC) 2 relies on emails that (RC) 2 sent to Mission in December of 2021, in which (RC) 2 unilaterally and unreasonably demanded that Mission respond to (RC) 2 by (RC) 2's deadline and further threatened that "if Mission did not affirmatively confirm that it would comply with its obligations . . . such omission would constitute an admission that Mission was in breach." *See* Am. Compl. ¶ 141. (RC) 2 does not allege, however, what provision in the Proposal gives (RC) 2 the right to make such demands and set such unilateral deadlines -- nor does the Proposal grant such rights to (RC) 2. More importantly, the Proposal does not impose such obligations on Mission so that Mission's failure to respond to (RC) 2 would be a breach of the Proposal. *See* Am. Compl. ¶¶ 139-145. In short, (RC) 2 does nothing to explain *how* Mission allegedly breached the Proposal, as opposed to just not responding to (RC) 2's unilateral and extra-contractual demands within the artificial and self-created deadlines asserted by (RC) 2. *See, e.g.*, Am. Compl. ¶ 141 (". . .such omission would constitute an admission that Mission was in breach"), ¶ 145 (". . .Mission has in fact confirmed that it is in breach of the Proposal Agreement"). Therefore, the allegation that Mission did not respond in the time and manner that (RC) 2 unilaterally and arbitrarily deemed appropriate does not constitute a breach of the Proposal's terms, as required for (RC) 2 to state a claim for breach of contract.[8] *See Canzona v. Atanasio*, 118 A.D.3d 837, 838 (2d Dept. 2014)

---

[8] To the extent such allegations would be relevant to any claims asserted by (RC) 2, they would be relevant only to (RC) 2's claim for anticipatory breach—which also fails as a matter of law for the reasons stated *infra*, Section I.C.

(recognizing as an essential element of a breach of contract claim "the defendant's breach of his or her contractual obligations"). The Proposal does not require responses or "confirmations" owed by Mission to (RC) 2 in any regard. *See generally* Proposal. (RC) 2's failure to allege any actual breaching conduct by Mission is fatal to (RC) 2's claim. *See id.*; *see also* Am. Compl.

Further, (RC) 2 has failed to allege the specific provision of the Proposal that was purportedly breached—which failure alone warrants dismissal of this claim. *See, e.g., Canzona*, 118 A.D.3d at 838; *Gallo v. Inter-Con Sec. Sys. Inc.*, 20-cv-4879 (KPF), 2021 WL 3913539, at *9 (S.D.N.Y. Sept. 1, 2021) (dismissing plaintiff's breach of contract claim because the plaintiff "failed to plead a breach of the agreement because he [did] not identif[y] specific provisions that Defendant allegedly breached") (citation omitted); *Orange Cnty. Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (dismissing breach of contract claim for the independent reason that the counter-plaintiff failed to allege the specific provision of the agreement that the counter-defendant allegedly breached, which is "an essential requirement for a breach of contract claim") (collecting cases). Indeed, the Amended Complaint is devoid of any identification of a specific provision of the Proposal that Mission allegedly breached. *See generally* Am. Compl. Accordingly, (RC) 2 has failed to allege the "breach" element of a prima facie breach of contract claim—much less state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (describing the requisite "plausibility" pleading standard under the federal rules).

Finally, this count is also founded upon and replete with allegations of inadmissible settlement communications, which warrants its dismissal for the reasons stated above. *See supra,* Section I.A.

For the foregoing reasons, (RC) 2 has failed to state a claim for breach of contract and the Court should dismiss Count II.

### C.      (RC) 2 Fails to Allege Anticipatory Breach of the Proposal (Count III)

Count III fails to state a claim for anticipatory breach, often referred to as anticipatory repudiation, under New York law. *See* Am. Compl. ¶¶ 151-157. Generally, an "[a]nticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). However, it is well-settled that "to sustain a cause of action sounding in anticipatory repudiation separate and distinct from a cause of action sounding in breach of contract, there must be among other things *some express and absolute refusal to perform*, or some voluntary act on the part of the individual which renders it impossible for him or her to perform"—indeed, a party's repudiation of a contract must be "positive and unequivocal" to form the basis of an anticipatory repudiation claim. *See, e.g.*, *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 807 (2011) (emphasis added and internal modifications and quotation marks omitted) (collecting cases) (reversing lower court's decision not to dismiss plaintiff's anticipatory repudiation claim where party's alleged repudiation was not an "unequivocal expression" of its intent to forgo its obligations); *see also St. Christopher's, Inc. v. JMF Acquisitions, LLC*, No. 20-3808-CV, 2021 WL 6122674, at *2 (2d Cir. Dec. 28, 2021) (affirming district court's dismissal of anticipatory repudiation claim and observing that to prevail on claim for anticipatory repudiation under New York law, "the obligee must prove that the obligor made 'an overt communication of intention not to perform' to the obligee that is both 'positive and unequivocal'") (citing *Tenavision, Inc. v. Neuman*, 45 N.Y.2d 145, 150 (1978)); *Ricatto v. M3 Innovations Unlimited, Inc.*, No. 18-cv-8404 (KPF), 2019 WL 6681558, at *8 (S.D.N.Y. Dec. 6, 2019).

Here, (RC) 2's allegations regarding Mission's so-called "repudiations" are insufficient as a matter of law for several reasons.

13

First, the purported repudiations were neither positive nor unequivocal. To the contrary, (RC) 2 has expressly alleged "it is not clear" and that it "remains in question" whether Mission will perform under the Proposal. *See* Am. Compl. ¶ 96 (alleging that as a result of Mission's communications and representations, "it is not clear whether Mission will complete the six-month stability testing for 39X21"), ¶ 99 (alleging that as a result of Mission's communications and representations, "Mission's performance, (i.e., completion) of the six-month stability testing remains in question"). Thus, as with its breach of contract claims, (RC) 2 fails to plead the most basic element of a claim for anticipatory breach, which is a positive, unequivocal repudiation by Mission. (RC) 2 fails to allege that Mission overtly communicated its intent not to perform under the Proposal, much less that Mission made a repudiation that was positive *and* unequivocal. *St. Christopher's Inc.*, 2021 WL 6122674, at *2. Rather, (RC) 2 has merely alleged, in an entirely conclusory and vague manner, that Mission's "statements" beginning in the summer of 2021 "raised in (RC) 2 a suspicion that Mission had violated, or intended to violate, the Proposal Agreement." *See* Am. Compl. ¶ 152.[9] In a similarly cursory manner, (RC) 2 claims that "James has threatened to cause Mission to cease its ongoing compliance with the Proposal Agreement unless (RC) 2 executed Mission's proposed [TTA]," *id.* ¶ 153,[10] and then tracking into the inadmissible settlement communications, alleges that Mission's statements through James and Mission's outside counsel on December 29, 2021, "confirm that Mission unequivocally intends to breach its obligations of the Proposal Agreement," which statements supposedly indicate "that

---

[9] Anticipatory breach is exclusively a prospective cause of action. *Kaplan v. Madison Park Grp. Owners, LLC*, 94 A.D.3d 616, 618 (1st Dept. 2012) ("By definition an anticipatory breach cannot be committed by a party already in material breach of an executory contract. It is well settled that an anticipatory breach of a contract is one that occurs before performance by the breaching party is due."). Thus, (RC) 2 cannot base any portion of its anticipatory breach claim on the allegation that Mission "has breached" the Proposal. *See id.; Princes Point LLC v. Muss Dev. L.L.C.*, 30 N.Y.3d 127, 133 (N.Y. 2017) ("An anticipatory breach of contract by a promisor is a repudiation of [a] contractual duty before the time fixed in the contract for . . . performance has arrived.") (citations omitted).

[10] Noticeably absent from the exhibits to the Amended Complaint are the two emails (RC) 2 refers to in this paragraph.

Mission is not going to perform its obligated work under Phases 5 and 6 of the Proposal Agreement. . . ."[11] *Id.* ¶ 154.

Such allegations are insufficient to state an anticipatory repudiation claim as a matter of law. Indeed, the qualified foundational allegations in the Amended Complaint that Mission's statements "raised concerns," "give (RC) 2 reason to believe," and "indicate" Mission's intent to breach, and that Mission's compliance "remains in question," do not constitute allegations that Mission made an overt, positive, and unequivocal statement that it intends not to perform its obligations under the Proposal. *See* Am. Compl. ¶¶ 13 n.3, 73, 94, 99; *see also St. Christopher's Inc.*, 2021 WL 6122674, at *2. This is also true to the extent (RC) 2 predicates its anticipatory repudiation claim on Mission's alleged silence in response to (RC) 2's emails containing unilaterally-imposed response deadlines, which silence by definition does not constitute a "positive" statement that Mission intends not to perform. Therefore, Count III fails because there is no allegation that Mission made an overt, positive, and unequivocal communication that it would not perform under the Proposal.[12]

Count III also fails because (RC) 2 has failed to allege that it is ready, willing, and able to perform its obligations under the contract—which failure is alone sufficient to warrant dismissal of (RC) 2's anticipatory repudiation claim. *See, e.g.*, *Ricatto*, 2019 WL 6681558, at *8 (granting defendant's motion for judgment on the pleadings as to plaintiff's anticipatory repudiation claim

---

[11] Although (RC) 2 claims that Mission in the settlement communication "is refusing to perform *inter alia* 'any future work of any type,'" in doing so (RC) 2 selectively and misleadingly quotes language from Mission's outside counsel's December 29, 2021 email—which email both confirmed that Mission was performing the stability testing that was the focus for the lawsuit, and then addresses potential next steps to try to settle the parties' admittedly fractured relationship. Again, this email is plainly inadmissible as a settlement communication pursuant to Federal Rule of Evidence 408. *See* Am. Compl. ¶ 154; *see also infra* Section II. Just as (RC) 2 cannot use such settlement communications to prove liability, it cannot use the settlement communications to plead liability. *See* Rule 408, Federal Rules of Evidence (barring evidence of compromise negotiations to prove liability); *see also infra* Section II.

[12] (RC) 2's conclusory characterization of Mission's statements as "unequivocal" warrants no consideration by the Court because it is merely a legal conclusion. *See Iqbal*, 556 U.S. at 678.

on the independent ground that plaintiff failed to allege he was ready, willing, and able to perform his contractual obligations); *see also U.S. v. Hon*, 17 F.3d 21, 26 (2d Cir. 1994) (observing that under New York law, "a plaintiff alleging an anticipatory breach of contract must show . . . that [it] was ready, willing, and able to perform its own obligations under the contract when performance was due."). Here (RC) 2 alleges -- at most -- that it "has paid (and will continue to pay) for the services Mission renders under the Proposal Agreement." Am. Compl. ¶ 124.[13] However, to accept these allegations as establishing that (RC) 2 would be "ready, willing, and able to perform" under the Proposal is to incorrectly assume that (RC) 2's *only* obligation under the Proposal is to pay Mission. Such an assumption is plainly contradicted by the language of the Proposal—in addition to paying Mission, (RC) 2 was also to provide a working, viable formula and methodology *ready for the testing and validation stages of the ANDA-submission process. See* Proposal section 2 (specifying that the scope of work was limited to "validation and production" of the Product). Additionally, the Proposal required (RC) 2 to engage timely in good-faith subsequent negotiations of the additional agreements to set forth the essential terms of the parties' business relationship. *See* Proposal §§ 3.9, 4.3, and 7.  For these reasons, (RC) 2 cannot maintain a claim for anticipatory breach against Mission because (RC) 2 is in continuous breach of the Proposal. *See Ricatto*, 2019 WL 6681558, at *8.

Third, because (RC) 2 has elected to assert an anticipatory repudiation claim against Mission, (RC) 2 is precluded as a matter of law from seeking Mission's specific performance under the Proposal. Second Circuit precedent provides: "When confronted with an anticipatory

---

[13] Although (RC) 2 alleges that it "*has* completely satisfied its obligations under the Proposal," Am. Compl. ¶ 53, (emphasis added), such an allegation is only retrospective, and does not speak to (RC) 2's readiness and ability to perform its continuing obligations under the Proposal, which include, *inter alia*, providing Mission with a working formula and methodology ready for the testing and validation phases of the ANDA submission process—not the disastrous science project that (RC) 2 has burdened Mission with in violation of the Proposal.

repudiation, the non-repudiating party has two mutually exclusive options. He may (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) he may continue to treat the contract as valid and await the designated time for performance before bringing suit." *Lucente*, 310 F.3d at 258 (citations omitted). As the Second Circuit instructs:

> the non-repudiating party must, however, make an affirmative election. He "cannot at the same time treat the contract as broken and subsisting," for "[o]ne course of action excludes the other." Indeed, "[t]he law simply does not . . . permit a party to exercise two alternative or inconsistent . . . remedies." Once a party has elected a remedy for a particular breach, his choice is binding with respect to that breach and cannot be changed.

*Id. at* 258–59 (internal citations omitted). Here, (RC) 2 fails to expressly make an election; instead, (RC) 2 impermissibly seeks damages *and* specific performance. *See* Am. Compl. at 30 (Wherefore clause). (RC) 2's failure is made even more egregious by the fact that (RC) 2 impermissibly reincorporates all preceding allegations—including its two breach of contract claims—into Count III. *See id.* ¶ 151. Despite (RC) 2's equivocating, there is no question that in filing and maintaining this action, (RC) 2 seeks damages for an alleged anticipatory breach.[14] *See* Am. Compl. ¶ 154 (alleging that Mission "intends to breach its obligations of the Proposal Agreement"), ¶ 157 ("Mission's anticipatory breaches of the Proposal Agreement have additionally caused damages to (RC) 2 in at least the amounts spent to date to develop docosanol 10% cream and prepare the ANDA submission, and the costs to reproduce that work with another partner."); at 30 (Wherefore

---

[14] "In determining which election the non-repudiating party has made, 'the operative factor . . . is whether the non breaching party has taken an action (or failed to take an action) that indicated to the breaching party that he had made an election.'" *Lucente*, 310 F.3d at 259 (quoting *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1013 (S.D.N.Y. 1995). Filing suit for anticipatory breach and seeking damages therein is plainly an election to terminate the parties' contractual relationship. *Compare id.* (finding that the plaintiff made a binding election to terminate the contractual relationship between the parties to the suit because "[f]irst and foremost, [the plaintiff] expressly stated in his Original Complaint that [the defendant's] cancellation letter was a breach of contract that entitled him to damages"), *with* Am. Compl. ¶ 157 ("Mission's anticipatory breaches of the Proposal Agreement have additionally caused damages to (RC) 2 in at least the amounts spent to date to develop docosanol 10% cream and prepare the ANDA submission, and the costs to reproduce that work with another partner.").

clause). Therefore, binding Second Circuit precedent precludes (RC) 2's claims for specific performance—indeed, (RC) 2 has *irrevocably elected to terminate* the contractual relations between (RC) 2 and Mission, and thus cannot seek *any specific performance* from Mission. *Lucente*, 310 F.3d at 125-59.

Finally, as with Counts I and II, Count III is also founded upon and replete with allegations of inadmissible settlement communications, which warrants its dismissal for the reasons stated above. See supra, Section I.A.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD STRIKE (RC) 2'S ALLEGATIONS BASED ON INADMISSIBLE SETTLEMENT COMMUNICATIONS

As noted above, (RC) 2's Amended Complaint should be dismissed in its entirety, including for the reason that it is replete with, and founded upon, allegations related to inadmissible settlement communications. *See supra,* Section I.A. Alternatively, under Rule 12(f), the Court should strike the allegations in (RC) 2's Amended Complaint referring to inadmissible settlement communications. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992), *aff'd sub nom. Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994) (striking, pursuant to Rule 12(f), the portions of plaintiff's complaint referring to inadmissible settlement discussions under Federal Rule of Evidence 408) (citing *Foster v. WNYC-TV*, No. 88-cv-4584 (JFK), 1989 WL 146277, at *6 (S.D.N.Y. Nov. 20, 1989) (striking, pursuant to Rule 12(f), exhibits attached to plaintiff's memorandum in opposition to defendant's motion to dismiss because the exhibits were inadmissible evidence of offers to compromise under Federal Rule of Evidence 408)); *see also Yankelevitz v. Cornell Univ.*, No. 95-cv-4593 (PKL), 1997 WL 115651, at *4 (S.D.N.Y. Mar. 14, 1997) ("If the challenged material in fact relates to settlement discussions, then such amendment would arguably be futile because they could be stricken under Rule 12(f). . . .") (citation omitted). Specifically, Rule 12(f) provides that "the court may order stricken from any pleading any

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Rule 12(f).

Here, like the plaintiff in *Kelly*, (RC) 2 impermissibly alleges and relies on inadmissible settlement communications for an improper purpose under Federal Rule of Evidence 408. *See* 145 F.R.D. at 40; *see also* Ex. F to Am. Compl. In fact, Exhibit F to the Amended Complaint is an email that explicitly states in the subject line: "RC2 vs. Mission: Settlement Communication." *See* Ex. F to Am. Compl. Moreover, the subject matter of the email plainly involves offers of settlement and withdrawal of pleadings. *Id.* In its Amended Complaint, (RC) 2 alleges that these settlement communications "confirm that Mission unequivocally intends to breach its obligations of the Proposal Agreement." Am. Compl. ¶ 154. In doing so, (RC) 2 unquestionably seeks to use the settlement communications to allege and then prove Mission's liability, which Federal Rule of Evidence 408 prohibits. *See Kelly*, 145 F.R.D. at 40 ("Settlement discussions are inadmissible to show fault under Fed. R. Evid. 408, and accordingly may be stricken from a complaint as immaterial and potentially prejudicial.") (citation omitted). Allowing (RC) 2 to found its claims on statements which are not admissible at trial is simply wrong, and would prejudice Mission's ability to defend itself throughout this litigation. Therefore, at a minimum, the Court should strike the portions of (RC) 2's Amended Complaint which refer to settlement discussions and dismiss any claims that depend on such allegations.[15]

---

[15] As discussed *supra*, Section I.A, striking these allegations would, as a practical matter, be impossible given the various allegations that refer generally to the "communications" that include the settlement communications. For this reason alone, and so the Court and the parties are not struggling hereafter to discern which portions of the Amended Complaint do not involve settlement discussions, Mission submits that dismissing the Amended Complaint in its entirety and requiring (RC) 2 to plead anew is the appropriate means of excising improper allegations.

## **CONCLUSION**

For the foregoing reasons, Mission moves this Court to dismiss (RC) 2's Amended Complaint with prejudice or, alternatively, to strike the allegations and exhibits therein that relate to inadmissible settlement communications, along with such other and further relief as the Court deems appropriate.


Dated: Jacksonville, Florida                          FOLEY & LARDNER LLP
          February 18, 2022

                                                      By: */s/ John A. Tucker*
                                                      John A. Tucker (*pro hac vice*)
                                                      1 Independent Drive, Suite 1300
                                                      Jacksonville, Florida 32202
                                                      Tel: 904.359.2000
                                                      Email: jtucker@foley.com

                                                      Jonathan H. Friedman
                                                      90 Park Avenue
                                                      New York, New York 10016
                                                      Tel: 212.338.3416
                                                      Email: jfriedman@foley.com

                                                      *Attorneys for Defendant*
                                                      *Mission Pharmacal Company*

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that, on February 18, 2022, I filed a copy of the foregoing via the

Court's CM/ECF filing system, which will serve the counsel of record listed on the attached service

list who are registered to receive service through the Court's CM/ECF filing system.

                              By: <u>/s/ *John A. Tucker*</u>

                                John A. Tucker

21

**SERVICE LIST**

Benjamin Weed
K&L GATES LLP
70 W. Madison Street
Suite 3100
Chicago, IL 60602
(312) 781-7166
*benjamin.weed@klgates.com*

Matthew Jason Weldon
K&L GATES LLP
599 Lexington Avenue
New York, NY 10022-6030
(212) 536-3900
*matthew.weldon@klgates.com*

Peter E. Soskin
K&L GATES LLP
4 Embarcadero Center
Suite 1200
San Francisco, CA 94111
(415) 802-8846
*peter.soskin@klgates.com*

*Counsel for Plaintiff*
*(RC) 2 Pharma Connect, LLC*